IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NOEL REESE                                                     PLAINTIFF

v.                     Civil No. 09-5214

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Noel Reese, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background**

The plaintiff filed his applications for DIB on November 17, 2006, alleging an onset date of September 19, 2006, due to hepatitis C, depression, headaches, back pain, chest pain, right foot and ankle pain, fatigue, emphysema, anxiety with panic attacks, and curvature of the spine. Tr. 105. His applications were denied initially and on reconsideration. Tr. 40. Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on October 30, 2008. Tr. 8-34. Plaintiff was present and represented by counsel.

At this time, plaintiff was 52 years of age and possessed a high school education and one year of vocational training. Tr. 48, 205. He had past relevant work ("PRW") experience as a

mask tool engineer, office manager, and customer service/sales representative. Tr. 48, 110, 113, 122-123, 151, 171, 172.

On February 25, 2009, the ALJ found that plaintiff's hepatitis C and mood disorder/depression were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 42-43. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform light work. However, Plaintiff had moderate limitations in the ability to respond appropriately to usual work situations and routine work changes and interact appropriately with supervisors. Tr. 45. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a small products assembler, cashier II, and fast food worker. Tr. 49.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 21, 2009. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

**II.   Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

### A.     The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

3

economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Evidence Presented:

In a letter dated August 21, 2007, Plaintiff laid out his medical history. Tr. 151-159. In March 2000, he was diagnosed with hepatitis C. He began chemotherapy to treat his hepatitis C in July 2000. This lasted approximately one year, during which time he did not work. The treatment proved unsuccessful, but Plaintiff continued to experience side effects including chronic fatigue. As a result, his employer allowed him to work from home. This arrangement continued for three years. In January 2003, a new chemotherapy program became available. Plaintiff participated in treatment for eight months, but the treatment was halted when doctors realized it was not working. During this round of treatment, Plaintiff managed to obtain long-term disability through his employer. However, once his treatment and recovery period expired, Plaintiff was laid off from his job. In April 2004, he and his wife opened a clothing store, but this did not fair well. By July, he could no longer afford his medications. In January 2005, he began a job at an auto parts warehouse. This lasted about two months. A friend then offered him a job running the office at his mechanic shop. The work was very stressful and Plaintiff decided to quit in July to prepare for his move to Arkansas. The preparations for moving took longer than he anticipated, but he and his wife relocated in December 2005. In January 2006, he obtained a job at a warehouse in Bentonville. He worked there for one month before obtaining a job at Lowe's. In May 2006, Plaintiff began experiencing right foot pain. A visit to the

4

podiatrist in August 2006 revealed that the bones in his ankle were fused together and other bones in his foot were spurred. In September 2006, Plaintiff left Lowe's. His wife was now working part-time, paying their living expenses. However, they were not able to pay their health insurance premiums every month, so many of their claims were being denied. Plaintiff stated that they were trying to pay off their bill with the doctor, and had not been seeing the doctor due to their balance. At the current time, he was enrolled in classes to become an architectural drafter. It was his hope he could obtain a job that would allow him to work from home. Tr. 151-159.

On March 13, 2003, Dr. Virginia Morrow indicated that Plaintiff had been undergoing treatment for his hepatitis C and was now totally, temporary disabled due to the side effects of this treatment. Tr. 194. She stated that he had been involved in treatment for 11 weeks and that the treatment and its side effects would continue for 48 weeks. Tr. 194.

On August 19, 2003, Dr. P. B. Tyer completed a long-term disability form for Plaintiff. Tr. 191-193, 195-198. He diagnosed Plaintiff with hepatitis C, depression, fatigue, and insomnia. Dr. Tyer noted that he had initially treated Plaintiff on April 24, 2000, and had last treated him on March 25, 2003. Plaintiff's medications included Wellbutrin, Lexapro, and Klonopin. Dr. Tyer indicated that Plaintiff could not lift; could sit, stand, and walk for a maximum of one hour; and, could not climb, twist, or bend. He also noted that Plaintiff's prognosis was guarded. Tr. 191-193, 195-198.

On July 13, 2006, Dr. Mark Olsen indicated that Plaintiff's viral count was still very high, but his liver enzymes were normal. Tr. 210-214. He showed no signs of current liver inflammation. Tr. 210-214.

On August 1, 2006, Plaintiff was examined by a podiatrist, due to right foot pain. Tr. 218-220. He reported pain in the lateral aspect of his right foot for two to three months. An x-ray revealed an anomaly of the subtalar joint suggestive of possible coalition. The doctor noted pain along the posterior and lateral aspect of Plaintiff's right foot and along the entire course of his peroneal tendon. He had a notable high arch and C-shaped foot. The doctor indicated that his symptoms were consistent with peroneal tendonitis. Plaintiff was prescribed Celebrex and over-the-counter insoles for comfort and support. Tr. 218-220.

On December 11, 2006, Plaintiff underwent a psychological evaluation with Dr. Letitia Hitz. Tr. 221-223. She noted that he was cooperative with testing, put forth good effort, and was motivated. I. Q. testing yielded an IQ of 107, which fell within the average range. Scholastic level exams yielded a score of 113, consistent with above average abilities. Dr. Hitz concluded that Plaintiff should be able to train in a typical college format and be successful at independent learning in an employment setting. His job potential was consistent with that of managerial or upper level clerical work. Tr. 221-223.

On June 15, 2007, Plaintiff underwent a mental status examination with Dr. Denise LaGrand. Tr. 227-233. Plaintiff stated that he had filed for disability due to weakness, pain, and depression. He indicated that Prozac helped some, but he had no stamina to do physical work and found it extremely difficult to stay full task for a full shift. Plaintiff denied problems getting along with others, but did state that his disability had caused some problems with his friends. Dr. LaGand noted no noticeable physical handicaps. Plaintiff had normal posture and gate. His thoughts were organized, logical, and goal-directed and he was able to stay focused on the exam. Plaintiff described his typical mood as depressed, angry, and anxious, with his current mood

being anxious and neutral. He had average knowledge and memory with low to below average ability to function appropriately socially and emotionally. Dr. LaGrand estimated his IQ to be average and concluded that his judgment was consistent with this. She diagnosed Plaintiff with major depression and assessed him with a global assessment of functioning score of 55-65. His ability to communicate and interact in a socially acceptable manner, be reliable, and function independently was adequate. No significant problems with persistence and pace were noted. Dr. LaGrand indicated that Plaintiff's combination of physical and mental impairments led to greater impairment and made him less likely to be successful in a job setting. Further, she also concluded that his ability to perform adequately at most job situations, handle the stress of a work setting, and deal with supervisors or co-workers was estimated to be low average. Tr. 227-233.

On August 20, 2008, Plaintiff was evaluated by Dr. Gary Thomas. Tr. 278-279. He reported a history of IV drug use in the 1980s leading to a diagnosis of hepatitis C in 2000. A liver biopsy performed in September 2001 reportedly showed stage II inflammation. A gastroenterologist concluded Plaintiff was immune to hepatitis A, so he was only administered the hepatitis B vaccinations. Records indicate Plaintiff underwent Interferon and Ribavirin treatment initially, but this proved ineffective. He was later treated with Pegylated Interferon and Ribavirin for eight months, but treatments were halted after no progress was noted after eight months of treatment. Plaintiff did not work due to the side effects of his treatment, including depression and chronic fatigue. Currently, however, he was working as an instructor at Northwest Arkansas Technical Institute. He reported continued difficulty due to his chronic fatigue. Dr. Thomas noted that testing revealed only mildly abnormal liver enzymes. An

examination was normal. Dr. Thomas advised Plaintiff that repeat treatment for his hepatitis C would likely be unsuccessful, given his history. He ordered an ultrasound of his liver, a colonoscopy, and up-to-date liver enzyme tests. Tr. 278-279. The ultrasound was unremarkable. Tr. 288. The colonoscopy revealed diverticulosis of the sigmoid colon and multiple polyps. Tr. 282-285. However, pathology found no malignancy. Tr. 282-288.

On April 10, 2009, Plaintiff sought out chiropractic treatment from Dr. Mark Sewell. Tr. 288. He complained of acute neck stiffness on both sides, acute mid-back stiffness, and acute lower back stiffness. An examination revealed mild muscle spasms in the cervical spine, palpable thoracic and lumbar spine muscle spasm on the left, subluxation of the C1 vertebral level on the right with joint fixation, segment subluxation of the C1 vertebral level on the right with joint fixation and restricted motion, segment subluxation evident at the T10 level on the left with segmental fixation, and a degree of restricted mobility on the left affecting the lumbar segment L5. Dr. Sewell administered manipulation and electrical muscle stimulation. Records indicate Plaintiff returned on April 13, 2009, April 16, 2009, and April 27, 2009, for identical treatments. Tr. 288-289.

**IV.   Discussion:**

Plaintiff contends that the ALJ erred in disregarding his subjective complaints and the impact his impairments have on his ability to perform work-related activities.

   **A.   Subjective Complaints/Severity of Impairments:**

When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents his from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

The record makes clear Plaintiff has been diagnosed with hepatitis C and depression. We note, however, that there is little medical evidence to support Plaintiff's claims. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); *Polaski*,

751 F.2d at 948. The objective evidence does establish that Plaintiff underwent treatment for his hepatitis C in 2003, and that doctors assessed him as being temporarily disabled during his period of treatment and recovery. However, there is no evidence to indicate the success of this treatment or to suggest that his temporary disability continued into the relevant time period, three years later. Plaintiff contends that Dr. Thomas's 2008 notation that further treatment would most likely be ineffective evidences that his past treatments were unsuccessful. It appears, though, that Dr. Thomas's comment was based on Plaintiff's own subjective report that treatment via Interferon and Ribavirin had been unsuccessful on two occasions in the past. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record supports ALJ's conclusion that treating physician's diagnosis and impressions were based largely on the plaintiff's subjective complaints with little objective medical support). There is no indication that Dr. Thomas was basing his opinion on Plaintiff's medical records.

Likewise, Dr. Tyer's certification that Plaintiff was temporarily disabled in 2003 relates to Plaintiff's condition at the time the certification was complete. There is no evidence indicating that Dr. Tyer treated Plaintiff during the relevant time period. Further, there are no records indicating that Plaintiff's hepatitis C symptoms were ever so severe as to warrant him seeking emergency treatment or hospitalization. In fact, it appears he was only prescribed medication to treat a condition associated with his hepatitis C on one occasion. Tr. 15-16. Had his hepatitis C symptoms been as severe as alleged, we believe he would have sought out more consistent treatment for his condition.

10

Plaintiff contends that his hepatitis C has caused him to suffer from chronic pain and fatigue. While we do note that these are classic symptoms of hepatitis C, the record is devoid of evidence to show that Plaintiff sought out regular treatment for these symptoms. There is absolutely no evidence of an ongoing pattern of treatment for his hepatitis C. Therefore, while we do not doubt Plaintiff suffers from some pain and fatigue, we do not believe it to be disabling.

In June 2007, Plaintiff's doctor prescribed Prozac and Clonazepam to treat his depression and insomnia. Tr. 227. There is, however, no indication that Plaintiff ever sough out mental health treatment from a mental health professional. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (finding that the claimant's failure to seek mental health treatment contradicted his subjective complaints). Plaintiff did not seek out counseling and was never hospitalized due to his mental impairments.

In January 2007, Dr. LaGrand diagnosed Plaintiff with moderate major depressive disorder and assessed him with a GAF of 55-65 (Tr. 231). A GAF score of 55 to 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning; while a GAF score of 61 to 65 is indicative of only mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). At this time, Dr. LaGrand noted that Plaintiff was successfully attending college and assessed him with a fair likelihood of significant improvement with treatment over the following twelve months. Tr. 232. His probability for success was also supported by Dr. Hitz's 2006 evaluation indicating that Plaintiff would be able to train in a typical college format and be successful at independent learning in an employment setting. Tr. 221-223.

Plaintiff contends that his failure to seek more consistent treatment should be excused due to economic hardship. Clearly, if a claimant is unable to follow a prescribed regimen of medication and therapy to combat his disabilities because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits. *Tome v. Schweiker,* 724 F.2d 711, 714 (8th Cir.1984). While these hardships can be considered in determining whether to award a claimant benefits, the fact that he is under financial strain is not determinative. *Benskin v. Bowen,* 830 F.2d at 884 n. 1. We can find no evidence to indicate that plaintiff was ever denied treatment or medication due to his financial status. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons). Further, we can find no evidence to show that plaintiff sought out any low-cost or indigent medical services that may have been available to him.

We also note that, in spite of he alleged disability, Plaintiff was able to perform substantial gainful activity after his alleged onset date and throughout the relevant time period. Tr. 42, 95, 151, 182. *See Wiseman v. Sullivan*, 905 F.2d 1153, 1156 (8th Cir. 1990) (search for work and finding part time employment is inconsistent with disability). Records indicate he earned $13,357.93 in 2006 and $779.00 in 2007, at which time he began vocational school. Tr. 227-233. By 2008, he was working full-time for Northwest Arkansas Technical institute, earning SGA. He cut back to part-time on October 3, 2008, earning $380.00 biweekly. Tr. 22-23, 27-28. This continued through the date of the hearing. Absent a showing of deterioration, working after the onset of an impairment is at least some evidence of an ability to work. *See Goff v. Barnhart,*

12

421 F.3d 785, 793 (8th Cir. 2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir. 2001). We believe this evidences Plaintiff's ability to perform some work-related activities.

Plaintiff's own reports concerning his daily activities also undermine his claim of disability. In August 2003, while trying to get long-term disability through his employer, Plaintiff reported the ability to wash dishes, perform lawn care, drive, watch movies, read, use the computer, play the guitar, and sometimes interact with friends. Tr. 203-205. On October 13, 2006, Plaintiff completed a function report in conjunction with his application for benefits. Tr. 97-104. He indicated that he could care for his own personal hygiene, prepare frozen foods, perform some cleaning, wash small loads of laundry, spend most of his time outside, shop for groceries, pay bills, count change, handle a savings account, use a checkbook, watch television, and play the guitar. Plaintiff also admitted that he could follow written and oral instructions, get along with authority figures, and handle changes in routine. Tr. 97-104. In 2007, Dr. LaGrand also noted that Plaintiff reported no difficulties with personal hygiene, dressing, preparing quick meals, shopping, driving, or performing household chores. Tr. 227-233. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Plaintiff's wife, Bonnie Reese, appeared and testified on his behalf. Tr. 28-32.. Ms. Reese testified that Plaintiff was depressed, frequently cried, experienced nightmares, suffered from memory problems, and experienced bouts of nausea and diarrhea throughout the day. She also indicated that Plaintiff was frequently fatigued and slept the majority of the time. We note that the ALJ properly considered her testimony but found it unpersuasive. This determination was well within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

### B. RFC Assessment:

Plaintiff also contends that the ALJ's RFC assessment is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or his RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or his limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

14

The ALJ properly considered plaintiff's subjective complaints, the objective medical evidence, and the RFC assessments of two non-examining, consultative doctors. On June 4, 2007, Dr. Bill Payne reviewed Plaintiff's medical records and concluded that his physical impairments were non-severe. Tr. 224-226.

On July 9, 2007, Dr. Brad Williams completed a mental RFC assessment and psychiatric review technique form. Tr. 234-251. Reviewing only Plaintiff's medical records, he concluded that Plaintiff had moderate limitations with regard to maintaining attention and concentration for extended periods, completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instruction and responding appropriately to criticism from supervisors, and setting realistic goals or making plans independently of others. Dr. Williams also determined Plaintiff could work where the interpersonal contact was routine, but superficial, the complexity of the task was learned by experience with several variables, judgment was used with limits, and the supervision required was little for routine but detailed for non-routine. He found only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace and noted no episodes of decompensation. Tr. 234-251.

Giving Plaintiff the benefit of the doubt concerning the limitations imposed by his hepatitis C, the ALJ determined that he would be physically limited to light work. He was also found to have moderate limitations in his ability to respond appropriately to usual work situations and routine work changes and interact appropriately with supervisors. Tr. 45. After reviewing the medical evidence of record, including the assessments of Drs. LaGrand and Hitz

15

and Plaintiff's work history, we find substantial evidence supports the ALJ's RFC assessment. Plaintiff was able to successfully attend vocational classes and to obtain full-time employment as an instructor at a technical institute, after her alleged onset date.

### C. Testimony of the Vocational Expert:

The final step in the evaluation is the determination of whether the plaintiff can return to his PRW and, if not, whether he can perform other jobs that exist in significant number in the national economy. The hypothetical question posed to a vocational expert need only to include "those impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* (citing *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir. 1993)); *see also Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir. 1994). Testimony from a vocational expert based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir.1996); *cf. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision).

In the present case, the Vocational Expert ("VE") appeared and testified at the administrative hearing in response to interrogatories that had been previously submitted to her. Tr. 32-34. Ms. Moore stated that if the Plaintiff were limited to light work allowing for moderate limitations in his ability to respond appropriately to usual work situations and routine work changes and appropriately interact with supervisors, he would still be able to perform work as a small parts assembler, cashier II, and fast food worker. Tr. 183-186.

We find that the hypothetical question posed by the ALJ in this case incorporated each of the physical and mental impairments that the ALJ found to be credible, and excluded those

16

impairments that were discredited or that were not supported by the evidence presented. Accordingly, the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy is supported by substantial evidence.

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of November 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE